UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
**EAST FORK FUNDING LLC**,                                   :
                                                             :
                     Plaintiff,    :  **MEMORANDUM DECISION AND ORDER**
                                                             :
          – against –                                :  20-CV-3404 (AMD) (RML)
                                                             :
**U.S. BANK, N.A.**,                                         :
                                                             :
                     Defendant.    :
------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

On July 29, 2020, the plaintiff filed a complaint seeking to discharge a mortgage encumbering its property because, among other things, "the applicable statute of limitations for commencing a foreclosure action has expired." *J & JT Holding Corp. v. Deutsche Bank Natl. Tr. Co.*, 173 A.D.3d 704, 706 (2d Dep't 2019), *leave to appeal denied*, 367 N.Y.3d 904 (2021); New York Real Property Actions and Proceedings Law ("RPAPL") § 1501(4). Before the Court are the parties' cross-motions for summary judgment. (ECF Nos. 28, 30.) For the reasons that follow, the plaintiff's motion is granted, and the defendant's motion is denied.

## BACKGROUND

### I. Factual Background

In 2006, Sean and Patricia Dros received a $356,000 loan to purchase a condominium with a parking space, secured with a promissory note and a mortgage. By 2010, the borrowers defaulted on the mortgage, and GMAC Mortgage, LLC—which owned the mortgage at that time—brought a foreclosure action in New York Supreme Court, Queens County. In that complaint, GMAC stated that it "elect[ed] to call due the entire amount secured by the mortgage." (ECF No. 30-9 at 7–8.) In addition, GMAC wrote that it "shall not be deemed to

have waived, altered, released or changed the election herein before made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective." (ECF No. 30-9 at 8–9.) In May 2011, GMAC filed what it called a "stipulation," asking the court to "cancel[]" the action "based on a discrepancy relating to service of the 90 Day Notice pursuant to RPAPL § 1304." (ECF No. 32-20 at 2.) GMAC was the only party to sign that "stipulation," because the borrowers never appeared in the action. (*Id.* at 4.)[1]

In November 2011, GMAC brought another foreclosure action in the Queens County Supreme Court. The complaint again stated that GMAC "elects to call due the entire amount secured by the mortgage," and provided that GMAC "shall not be deemed to have waived, altered, released or changed the election . . . by reason of any payment after the commencement of this action." (ECF No. 30-10 at 8–9.)

In July 2015, GMAC assigned the mortgage to the defendant. (*See* ECF No. 34 at 8.) In February 2016, GMAC—not the defendant—discontinued the second foreclosure action "due to inability to verify compliance with pre-acceleration notice requirements." (ECF No. 32-19 at 3, 5.) Once again, the borrowers did not appear in the case and did not sign the stipulation of dismissal. (*Id.* at 5.)

While the second foreclosure action was pending, the Board of Managers of the borrowers' building filed a lien against the property for unpaid common charges totaling $26,464.11. In March 2013, the Board began a foreclosure action of its own in the Queens

---

[1] For this reason, the plaintiff characterizes the filing as a "notice" rather than a "stipulation." (ECF No. 41 at 4 & n.3.)

County Supreme Court. It was successful, and the plaintiff bought the property through a judicial sale in October 2016.[2]

## II. Legal and Procedural Background

The parties filed cross-motions for summary judgment on March 18, 2022. The plaintiff urged several grounds for discharge, including that the mortgage was improperly recorded and did not describe the property, that the defendant is estopped from arguing it has a lien against the property and that the statute of limitations has run. (*See* ECF No. 30.) The defendant argued that the documents in and outside the chain of title gave the plaintiff notice of the mortgage. (ECF Nos. 28, 34.) The defendant also rejected the plaintiff's statute-of-limitations argument, citing *Freedom Mortgage Corp. v. Engel*, 37 N.Y.3d 1 (2021). In that case, the New York Court of Appeals ruled that "where acceleration occurred by virtue of the filing of a complaint in a foreclosure action, the noteholder's voluntary discontinuance of that action constitutes an affirmative act of revocation of that acceleration as a matter of law." *Id.* at 32. Moreover, that revocation "reinstat[es] the borrowers' right to repay any arrears and resume satisfaction of the loan over time via installments," thereby resetting the limitations period to bring "a new foreclosure claim" in the future. *Id.* at 28. The defendant claimed that is exactly what happened in this case: GMAC's 2011 "stipulation" de-accelerated the mortgage, stopping the limitations clock; the 2011 foreclosure action restarted the clock; and the 2016 stipulation reset it once more.

In December 2022, the New York legislature passed the Foreclosure Abuse Prevention Act ("FAPA") specifically to "overrule *Engel*." (ECF No. 41 at 7 (quoting FAPA Sponsoring

---

[2] At the oral argument, the parties confirmed that they do not know whether GMAC and the borrowers communicated in any manner or whether the borrowers made any payments after GMAC filed the first foreclosure action. The parties also explained that the defendant filed a third foreclosure action against the borrowers in 2016, before the plaintiff acquired the property; the parties agree that it has no effect on the instant summary judgment motions.

3

Memorandum at 7).) The statute amends the New York Civil Practice Law and Rules ("CPLR") § 3217 to provide that a:

> voluntary discontinuance of [any action on a mortgage], whether on motion, order, stipulation or by notice, shall not, in form or effect, waive, postpone, cancel, toll, extend, revive or reset the limitations period to commence an action and to interpose a claim, unless expressly prescribed by statute.

FAPA § 8 (codified at CPLR § 3217(e)). It also amends CPRL § 203 to clarify that:

> Once a cause of action upon [a mortgage] has accrued, no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period prescribed by law to commence an action and to interpose the claim, unless expressly prescribed by statute.

FAPA § 4 (codified at CPLR § 203(h)). Finally, FAPA § 10 states that the statute "shall apply to all actions commenced on [a mortgage] in which a final judgment of foreclosure and sale has not been enforced."

The Court directed the parties to file supplemental pleadings addressing FAPA's impact on the statute of limitations and held an oral argument to discuss those pleadings. (*See* ECF entries dated January 5 and March 16, 2023.)

## LEGAL STANDARD

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact "exists and summary judgment is therefore improper where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 296 (2d Cir. 2020) (internal quotation marks and citation omitted).

Article 15 of RPAPL codifies the common law action to quiet title. It provides, in relevant part:

4

> Where the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired, any person having an estate or interest in the real property subject to such encumbrance may maintain an action against any other person or persons . . . to secure the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom . . . .

RPAPL § 1501(4). To discharge a mortgage pursuant to § 1501(4), a plaintiff must demonstrate: "1) that it has an estate or interest in the real property; 2) that all necessary parties to the action were joined; and 3) that the applicable statute of limitations for commencing a foreclosure action has expired without the commencement of a foreclosure action." *Gustavia Home LLC v. Envtl. Control Bd.*, No. 18-CV-6485, 2019 WL 4359549, at *5 (E.D.N.Y. Aug. 21, 2019). The parties dispute only the third prong of that test: whether the statute of limitations precludes a future foreclosure action.

## DISCUSSION

In New York, an action to foreclose on a mortgage is subject to a six-year limitations period. CPLR § 213(4); *Retemiah v. Bank of N.Y. Mellon*, 195 A.D.3d 649, 650 (2d Dep't 2021). For a mortgage payable in installments, "separate causes of action accrue[] for each installment that is not paid, and the statute of limitations begins to run, on the date each installment becomes due." *Wells Fargo Bank, N.A. v. Burke*, 94 A.D.3d 980, 982 (2d Dep't 2012). However, "once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt." *Ditmid Holdings, LLC v. JPMorgan Chase Bank, N.A.*, 180 A.D.3d 1002, 1003 (2d Dep't 2020) (citation omitted).

If the plaintiff establishes, "prima facie," that a prior foreclosure action against the property was commenced more than six years ago, the burden "shift[s]" to the defendant "to present admissible evidence establishing that the [instant] action [is] timely or to raise a question of fact as to whether the action [is] timely." *U.S. Bank N.A. v. Martin*, 144 A.D.3d 891, 892 (2d

5

Dep't 2016). The plaintiff has met its initial burden, because the parties agree that either the 2010 or the 2011 foreclosure action triggered the statute of limitations. *See, e.g.*, *Burke*, 94 A.D.3d at 983 ("Commencement of a foreclosure action may be sufficient to put the borrower on notice that the option to accelerate the debt has been exercised."); *53rd Street, LLC v. U.S. Bank Nat'l Ass'n*, 8 F.4th 74, 78 (2d Cir. 2021) (same).[3] The burden is accordingly on the defendant to demonstrate that the limitations clock has been successfully reset.

## I. FAPA Applies to this Case and Bars Future Foreclosure Actions

The defendant cannot meet its burden after FAPA. As the statute provides, a "voluntary discontinuance" will not "waive, postpone, cancel, toll, extend, revive or reset the limitations period." CPLR § 3217(e); *see also id.* § 203(h) (precluding "unilateral extension[s] of the limitations period"). That means that GMAC's unilateral "stipulations," without more, did not reset the clock—and the defendant does not provide evidence of anything more: no additional communications from GMAC to the borrowers, no superseding agreement reviving the installment payment plan, no additional payments that the borrowers made.

The defendant claims that "FAPA has no effect" on this case. (ECF No. 43 at 6.) It advances a multi-step argument to support that contention. First, the defendant argues that New York courts have long held that "a lender may revoke its prior acceleration of debt through an affirmative act of revocation occurring during the six-year limitations period." (*Id.* at 3–4 (cleaned up) (citing *Citimortgage, Inc. v. Dalal*, 187 A.D.3d 567, 568 (1st Dep't 2020); *Wells*

---

[3] That prior foreclosure actions were brought by the defendant's predecessor in interest and against the original borrowers rather than the plaintiff does not change the analysis. *See 53rd Street*, 8 F.4th at 76–77 (considering a plaintiff's action to discharge a mortgage on statute-of-limitations grounds on essentially the same facts as here); *U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp. Home Equity Mortg. Asset-Backed Pass-Through Certificates Series 2006-KS2 v. Balderston*, 163 A.D.3d 1482, 1483 (4th Dep't 2018) (holding that the current "owner of the property[] has standing to assert the [statute-of-limitations] defense" even though the previous foreclosure action was brought against the original borrower).

*Fargo Bank, Nat'l Ass'n v. Maddaloni*, 186 A.D.3d 1587, 1588 (2d Dep't 2020); *Beneficial Homeowner Servs. Corp. v. Thwaits*, 185 A.D.3d 1126, 1128 (3d Dep't 2020); *U.S. Bank Nat'l Ass'n for Residential Asset Sec. Corp. Home Equity Mortg. Asset-Backed Pass-Through Certificates Series 2006-KS2 v. Balderston*, 163 A.D.3d 1482, 1484 (4th Dep't 2018)).)

Second, the defendant says that the Court of Appeals decided a very narrow issue in *Engel*: what a mortgagee must do to revoke acceleration. The *Engel* court held that when a mortgagee accelerated a mortgage by filing a foreclosure action, it can correspondingly de-accelerate the mortgage by discontinuing that action.

Third, according to the defendant, FAPA does not mention de-acceleration and thus does not change either the long-held understanding "that a noteholder may exercise its contractual authority to accelerate or de-accelerate an installment payment loan" or *Engel*'s "specific determination that the discontinuance of a foreclosure action acts to de-accelerate a loan." (ECF No. 43 at 1–2, 6.) Therefore, according to the defendant, GMAC "properly" de-accelerated the mortgage in 2011 and again in 2016. (*Id.* at 9.)

The defendant claims that those de-accelerations necessarily de-accrued the 2010 and 2011 actions since the entire debt was no longer due. *See Ditmid Holdings*, 180 A.D.3d at 1003 ("once a mortgage debt is accelerated, the entire amount is due and the Statute of Limitations begins to run on the entire debt"). Consequently, the defendant says, FAPA's provision—"once a cause of action upon [a mortgage] has accrued, no party may . . . unliterally . . . reset the accrual," CPRL § 203(h)—does not apply to this action, because there is no pending, "accrued" cause of action. In short, the defendant claims that although the legislature set out to overrule *Engel*, it did not actually accomplish that task, because it did not specifically address de-acceleration.

7

The defendant's reading of FAPA undermines the statute's plain text and the legislature's straightforward intent. FAPA does not need to address de-acceleration expressly to regulate the statute of limitations because, as the defendant observes, the two concepts are inextricably intertwined: if you legislate one, you legislate the other. Because FAPA precludes mortgagees from resetting the limitations period by voluntarily discontinuing a foreclosure action, § 3217(e), or by any unilateral waiver, § 203(h), the statute necessarily overrules *Engel*'s holding that a unilateral "discontinuance of a foreclosure action acts to de-accelerate a loan," (ECF No. 43 at 1–2). And that is how New York courts have interpreted FAPA. *See GMAT Legal Title Tr. 2014-1 v. Kator*, 213 A.D.3d 915, at *2 (2d Dep't Feb. 22, 2023) (slip op.) ("FAPA had the effect of nullifying" *Engel*'s holding that a "voluntary discontinuance" of a foreclosure action "serve[s] to reset the statute of limitations.").

The defendant's reading of FAPA would leave the statute essentially meaningless. A mortgagee could repeatedly discontinue foreclosure actions and then claim that no action has yet "accrued" for purposes of FAPA. *But see Corley v. United States*, 556 U.S. 303, 314 (2009) ("one of the most basic interpretive canons [is] that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (cleaned up)). That is not what the legislature had in mind. Accordingly, FAPA applies to this action, and the statute of limitations bars any future foreclosure action against the plaintiff's property.

## II.     FAPA Is Not Unconstitutional as Applied to this Case

The defendant argues, in the alternative, that enforcing FAPA in this action would violate the parties' freedom of contract. The Contracts Clause of the U.S. Constitution prohibits states from enacting laws impairing the "Obligation of Contracts." U.S. Const. Art. I, §10, cl. 1. "This

8

inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Because "there was no contractual agreement" about de-acceleration or the statute of limitations, *id.* at 186–87, the defendant cannot succeed on this argument.

As discussed above, CPLR § 3217(e) states that a "voluntary discontinuance" of a foreclosure action does not by itself reset the limitations period. But nothing in that section prohibits the parties from agreeing in their mortgage contract that a stipulation—or any other specific action—will de-accelerate the mortgage and reset the statute of limitations. If they so agree, it will be their agreement, not the "voluntary discontinuance" alone, that resets the limitations clock. The same goes for § 203(h), which prevents the mortgagee from "unilaterally" waiving, postponing or resetting the statute of limitations—a contractual understanding that a particular act resets the limitations period means the act is no longer unilateral. FAPA therefore does not interfere with the freedom of contract; it merely strengthens the notice requirements to ensure that mortgagees provide borrowers with "concrete contemporaneous guidance as to their current contractual obligations." *53 Street*, 8 F.4th at 79 (citation omitted); *see also* FAPA § 3 (clarifying that parties to a mortgage contract may continue to "effect, postpone, cancel, reset, toll [or] revive" the statute of limitations "as provided" in General Obligations Law § 17-105(1)—that is, "by the express terms of a writing signed by the party to be charged").

The mortgage contract at issue here "make[s] no express mention of" a mortgagee's right to de-accelerate a mortgage or to reset the statute of limitations, *Romein*, 503 U.S. at 187. (*See* ECF No. 32-13.) In fact, the only clause in the mortgage contract on this topic gives the borrowers the "the right to have lender's enforcement of this security instrument discontinued."

9

(*See id.* at 18 ¶ 19 (capitalization altered) (allowing the borrowers to stop the sale of their property if they pay the full amount due at least five days before the sale).) FAPA, therefore, does not impair any express contractual right of the defendant.

Nor can the defendant claim that the mortgage contract implicitly incorporated the *Engel* rule, because all the operative events took place years before the New York Court of Appeals decided the case: the borrowers and the defendant's predecessor in interest signed the mortgage agreement in 2006, and GMAC purported to de-accelerate its foreclosure actions in 2011 and 2016. *See Romein*, 503 U.S. at 188–89 (rejecting a similar incorporation argument for this reason); *Landgraf v. USI Film Prod.*, 511 U.S. 244, 265 (1994) (reiterating the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place" (citation omitted)).

The defendant resists this interpretation of FAPA. In its view, FAPA goes further than the pre-*Engel* case law, because it categorically prohibits mortgagees from "unilaterally" de-accelerating the mortgage. *Compare Citimortgage*, 187 A.D.3d at 568 (holding that "the voluntary withdrawal of a prior foreclosure action does not, in itself, constitute an affirmative act to revoke" acceleration but contemplating that other communications from the mortgagee may do so, if they clearly "indicate that the [mortgagee] would accept installment payments from the [borrower]"), *with* CPLR § 203(h) (providing that "no party may, in form or effect, unilaterally waive, postpone, cancel, toll, revive, or reset the accrual thereof, or otherwise purport to effect a unilateral extension of the limitations period" and making no exceptions for clear notices).

I do not reach this question, because, as discussed above, the defendant does not point to any communications between GMAC and the borrowers except for GMAC's filings in court. I hold only that FAPA is not unconstitutional on the facts of this case.

10

### III. The Statute of Limitations Has Expired Even Under *Engel*'s Rule

I would reach the same result even without FAPA. *Engel* held that "the noteholder's voluntary discontinuance of th[e] action constitutes an affirmative act of revocation of . . . acceleration" only "absent an express, contemporaneous statement to the contrary by the noteholder." 37 N.Y.3d at 32. In the 2011 and 2016 "stipulations," however, GMAC discontinued the foreclosure actions because of "discrepanc[ies] relating to service of the 90 Day Notice pursuant to RPAPL § 1304," and explicitly stated that it would attempt "proper service" of the notice. (ECF No. 32-20 at 2 (discontinuing the 2010 action); *see also* ECF No. 32-19 at 5 (noting that the 2011 "foreclosure action is being discontinued due to inability to verify compliance with pre-acceleration notice requirements").) Moreover, the complaints in both the 2010 and the 2011 actions stated that the mortgagee "shall not be deemed to have waived, altered, released or changed the election . . . by reason of any payment after the commencement of this action." (ECF No. 30-9 at 8–9; ECF No. 30-10 at 9.) Accordingly, even under *Engel*'s rule, GMAC's unilateral "stipulations" did not provide the borrowers sufficient notice that they could resume paying their loan installments.

Finally, GMAC discontinued the 2011 action after it assigned the loan to the defendant. While that might be the proper procedure for discontinuing the action in the New York Supreme Court, it did nothing for *Engel*'s purposes, because GMAC no longer had the authority to allow the borrowers to go back on the installment plan. Therefore, even if GMAC properly de-accelerated the mortgage in 2010, the 2011 acceleration was still in place, and the statute of limitations expired in 2017.

## CONCLUSION

For these reasons, the defendant did not meet its burden "to present admissible evidence establishing that [a future foreclosure] action [would be] timely or to raise a question of fact as to whether the action [would be] timely." *Martin*, 144 A.D.3d at 892. Accordingly, the mortgage must be discharged under RPAPL § 1501(4), and I need not consider any other questions raised in the parties' pleadings. The plaintiff's motion for summary judgment is granted; the defendant's motion is denied. The Clerk of Court is respectfully directed to close this case.

**SO ORDERED.**

                                                                                         s/Ann M. Donnelly
                                                                               ANN M. DONNELLY
                                                                               United States District Judge

Dated: Brooklyn, New York
        March 23, 2023